GUNN, Respondent, vs. THE WISCONSIN & MINNESOTA RAIL-
ROAD COMPANY, Appellant.

*November 5 — November 22, 1887.*

*Railroads:  Injury at highway crossing:  Contributory negligence.*

A person who, upon approaching a railroad crossing which he knows
to be dangerous, leaves his own team, no matter how gentle, to
make the crossing without a driver, goes forward to take a seat
upon another sleigh, and makes no effort to look or listen for a
train, is guilty of gross negligence and cannot recover for an in-
jury caused by a collision with his team, even though the train
was negligently run, and though it could not have been seen by
him upon approaching the crossing.

APPEAL from the Circuit Court for *Eau Claire* County.

This action was brought to recover damages for inju-
ries to the plaintiff's horses, sleigh, and harness, alleged
to have been caused by the negligence of the employees of
the defendant company in running one of its trains between
the cities of Chippewa Falls and Eau Claire, in February,
1883. At a highway crossing the train ran against and upon
the property in question, and inflicted the injury complained
of.  The case is further stated in the opinion.

A motion for a nonsuit was denied.  There was a special
verdict in which the jury found, among other things, that
the injury was caused by the negligence of the employees
of the defendant in charge of the train, and that the per-
son in charge of plaintiff's team was not guilty of any want
of ordinary care contributing to such injuries.  A motion
on behalf of the defendant for a new trial was denied, and
judgment was entered for the plaintiff for the damages
assessed by the jury, to wit: $372.37.  The defendant ap-
peals from the judgment.

*D. S. Wegg* and *Howard Morris*, for the appellant, to the
point that plaintiff cannot recover if by looking and listen-
ing he might have learned of the approaching train in time

to avoid the accident, cited *Eilert v. G. B. & M. R. Co.* 48 Wis. 609; *Bower v. C., M. & St. P. R. Co.* 61 id. 457; *Williams v. C., M. & St. P. R. Co.* 64 id. 1; *Schofield v. C., M. & St. P. R. Co.* 114 U. S. 615.

*W. F. Bailey*, for the respondent, cited *Mackay v. N. Y. C. R. Co.* 35 N. Y. 81; *Ernst v. Hudson River R. Co.* id. 26; *Kelly v. St. P., M. & M. R. Co.* 29 Minn. 1; *Duffy v. C. & N. W. R. Co.* 32 Wis. 270; *Bower v. C., M. & St. P. R. Co.* 61 id. 460; *Eilert v. G. B. & M. R. Co.* 48 id. 606; *Urbanek v. C., M. & St. P. R. Co.* 47 id. 64.

LYON, J. The railroad of the defendant company from Chippewa Falls to Eau Claire runs south, and the highway upon which the team in question was traveling runs nearly parallel with the railroad for some distance, and then turns sharply to the west and crosses the track. At a point eighteen rods north of the crossing the highway is four rods east of the east line of the defendant's right of way, and gradually approaches nearer to the railroad as it approaches the crossing. At the crossing the grade of both railroad and highway is even with the natural surface of the ground. About one hundred feet north of the crossing the railroad passes through an excavation about three feet deep. There is a growth of small oak brush between the highway and the railroad track near the crossing. From the crossing north for over a half a mile the track of the railroad is straight. The day of the accident the weather was still and cold. Between three and five o'clock in the afternoon of February 12, 1883, the plaintiff's team, in charge of one Henry Johnson, passed along the highway from the north, going to Eau Claire. Two other teams were in company, one in advance of and one behind plaintiff's team. Johnson, the driver of plaintiff's team, was well acquainted with the crossing, having frequently driven over it, and knew that trains frequently passed there. Just be-

fore reaching the crossing Johnson left his team and sleigh, and mounted the sleigh in advance of him, sitting upon a rack thereon with his face to the south. He had on a woolen cap drawn over his ears, and a buffalo overcoat, the collar of which was turned up. He sat there looking south as they were crossing the railroad track, his own team following along close to the forward sleigh, without any driver. Just as the forward team was leaving the .railroad track, and before the sleigh was clear of it, Johnson glanced over his shoulder, and saw a train within. a few feet of the sleigh coming from the north. He gave the alarm. The driver hurried his team, and Johnson jumped from the sleigh. The locomotive struck the hind end of the rack on the forward sleigh, and at the same time struck the plaintiff's horses which were just crossing the track, and inflicted the injuries complained of.

The claim of counsel for the plaintiff is that the oak brush between the highway and the track prevented travelers on the highway from seeing a train approaching from the north until they were very near the railroad track, and that no proper signal was given from the locomotive attached to the train as it approached the crossing. Also, that the train was running at an unlawful rate of speed, the crossing being within the limits of the city of Eau Claire. For the purposes of the case it will be assumed that these propositions are true; that is, that the train was negligently run and operated, and that it could not have been seen by a person approaching the crossing, because of the brush.

The case requires but little discussion. On his own statement, and on the uncontradicted testimony, it is a case of most gross and inexcusable negligence on the part of Johnson, who was in charge of the plaintiff's team and property, and for whose negligence the plaintiff is liable. It seems almost incredible that a person in his senses, driving a team of horses and approaching a dangerous railroad

crossing rendered doubly dangerous by the presence of the brush which prevented him from seeing an approaching train, and who was thoroughly cognizant of the dangerous character of the crossing, should, just as he was about to cross the railroad track, deliberately lay down his lines, leave his team, go forward and take a seat upon the other sleigh, having his ears so muffled that he could not well hear an approaching train, and sitting with his back turned in the direction of the most dangerous approach to the crossing. If the books furnish a stronger case of contributory negligence, our attention has not been called to it.

We do not overlook the claim of the plaintiff, supported by testimony, that his horses were very gentle, and that if Johnson had had time to order them to stop after he saw the approaching train and before they went upon the track, they would have obeyed his order. But he had no time to give the order, and it was his own negligence that he had no time to do so. Had he been on the alert, although on the forward sleigh, he might have seen the approaching train before the forward team crossed the track, and would have had abundant time to order his team to stop. Why he did not see it sooner has already been stated. But we do not rest our judgment upon this negligence. We hold that it was negligence for Johnson, under the circumstances, to leave his horses and surrender the usual control of them by the reins, trusting them to make the crossing in safety without a driver, no matter how gentle they were. Had he been with his team and in the exercise of proper diligence and care, he would doubtless have discovered the approach of the train in time to avoid injury. If by reason of the brush he could not have seen the approaching train, still had he used proper precautions he undoubtedly could have heard its approach on that still, cold day. The conditions were all favorable for hearing the train a long distance away had reasonable or proper precaution been taken in that behalf.

In *Seefeld v. C., M. & St. P. R. Co., post,* p. 216, we hold that if the traveler approaching a crossing cannot see the railroad on either side of the crossing, and knowing that it is about time for a train to pass there, and especially if there are noises being made which interfere with his hearing an approaching train, it is his duty to stop and listen before crossing the railroad track. It is reasonably certain that a much less degree of care on the part of Johnson would have saved the plaintiff's property from destruction.

Our conclusions are that the court should have granted the motion for a nonsuit, or should have directed a verdict for the defendant. Failing to do either, the motion for a new trial should have been granted.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to award a new trial.

See note to this case in 35 N. W. Rep. 282.— REP.